**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE TAASERA LICENSING, LLC, PATENT LITIGATION | § § § § § **MDL-3042** |

**TAASERA LICENSING LLC'S RESPONSE IN OPPOSITION TO
MOTION FOR CENTRALIZATION PURSUANT TO 28 U.S.C. § 1407**

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ................................................................................................................ 1

II. BACKGROUND .................................................................................................................. 2

    A. Taasera ..................................................................................................................... 2

    B. Defendants and Declaratory Judgment Plaintiffs .................................................... 2

    C. Litigation History ..................................................................................................... 3

III. LEGAL STANDARD .......................................................................................................... 5

IV. ARGUMENT ....................................................................................................................... 6

    A. The Trend Micro Declaratory Judgment Action Should Not Be Centralized Because It Can Be Informally Coordinated Through Common Counsel ................................................................................................................ 6

    B. The Palo Alto Declaratory Judgment Action Should Not Be Centralized Because That Case Relates Only to Infringement by Palo Alto ............................. 8

    C. The Products Do Not Overlap .................................................................................. 9

    D. Taasera Will Move to Consolidate the Two Eastern District of Texas Actions ................................................................................................................... 10

    E. If Consolidated, Transfer to the Eastern District of Texas is Appropriate for the Follow-on Declaratory Judgment Actions ................................................. 11

V. CONCLUSION ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ArrivalStar S.A. Fleet Mgmt. Sys. Pat. Litig.*,
   802 F. Supp. 2d 1378 (J.P.M.L. 2011)...................................................................................10

*In re Bear Creek Techs., Inc. ('722) Pat. Litig.*,
   858 F.Supp. 2d 1375 (J.P.M.L. 2007).......................................................................................9

*In re: Blue Spike, LLC Pat. Litig.*,
   278 F.Supp. 3d 1379 (J.P.M.L. 2017).......................................................................................6

*In re Concrete Pipe*,
   302 F. Supp. 244 (J.P.M.L. 1969)..........................................................................................6, 7

*In re: Constellation Techs. LLC Pat. Litig.*,
   38 F.Supp. 3d 1392 (J.P.M.L. 2014).......................................................................................6, 7

*In re: Droplets, Inc. Pat. Litig.*,
   908 F.Supp. 2d 1377 (J.P.M.L. 2012).......................................................................................7

*In re Eli Lilly & Co. (Cephaliexin Monohydrate) Pat. Litig.*,
   446 F.Supp. 242 (J.P.M.L. 1978).............................................................................................7

*In re Highway Accident Near Rockville, Conn., on Dec. 30, 1972*,
   388 F. Supp. 574 (J.P.M.L. 1975)............................................................................................7

*In re Klein*,
   923 F. Supp. 2d 1373 (J.P.M.L. 2013).....................................................................................7

*NetJets Aviation, Inc. v. LHC Commc'ns*,
   537 F.3d 168 (2d Cir. 2008).....................................................................................................4

*In re Quest Integrity USA, LLC ('874) Patent Litig.*,
   148 F. Supp. 3d 1356 (J.P.M.L. 2015).................................................................................7, 11

*In re: Transocean Ltd. Sec. Litig.*,
   753 F. Supp. 2d 1373 (J.P.M.L. 2010).....................................................................................6

*In re Zeroclick, LLC Pat. Litig.*,
   437 F. Supp. 3d 1362 (J.P.M.L. 2020).................................................................................7, 11

**Statutes**

28 U.S.C. § 1407(a) .......................................................................................................................5

## **TABLE OF EXHIBITS**

| Exhibit | Description |
|---|---|
| 1 | Texas Franchise Tax Public Information Report for Taasera Licensing LLC |
| 2 | Tim Scahill LinkedIn Profile |
| 3 | Trend Micro Stock and Bond Information |
| 4 | *Taasera Licensing LLC v. Trend Micro Incorporated*, Case No. 2:21-cv-00441-JRG-RSP, Complaint for Patent Infringement, Dkt. No. 1 (E.D. Tex.) |
| 5 | *Trend Micro, Inc. v. Taasera Licensing LLC*, Case No. 3:22-cv-518, Dkt. No. 1 (N.D. Cal.) |
| 6 | Trend Micro – Contact Locations |
| 7 | Check Point Company Overview |
| 8 | *Taasera Licensing LLC v. Check Point Software Technologies Ltd.*, Case No. 2:22-cv-00063-JRG, Complaint for Patent Infringement, Dkt. No. 1 (E.D. Tex.) |
| 9 | Palo Alto Networks United States Locations |
| 10 | *Trend Micro, Inc. v. Taasera Licensing LLC*, Case No. 3:22-cv-00518-N, Joint Initial Case Management Report, Dkt. No. 23 (N.D. Tex.) |
| 11 | Docket Sheets for *Taasera Licensing LLC v. Trend Micro Incorporated*, Case No. 2:21-cv-00441-JRG-RSP (E.D. Tex.) and Docket Sheets for *Trend Micro Inc. v. Taasera Licensing LLC*, Case No. 3:22-cv-00518-N (N.D. Tex.) |
| 12 | *Palo Alto Networks, Inc. v. Taasera Licensing LLC and Quest Patent Research Corporation*, Civil Action No. 1:22-cv-02306-ER, First Amended Complaint for Declaratory Judgment of Non-Infringement, Dkt. No. 21 (S.D.N.Y.) |
| 13 | Letter to Judge Edgar Ramos on behalf of Taasera Licensing LLC dated June 1, 2022, Dkt. No. 39, *Palo Alto Networks, Inc. v. Taasera Licensing LLC and Quest Patent Research Corporation*, Civil Action No. 1:22-cv-02306-ER (S.D.N.Y.) |
| 14 | Letter to Judge Edgar Ramos on behalf of Quest Patent Research Corporation dated June 1, 2022, Dkt. No. 41, *Palo Alto Networks, Inc. v. Taasera Licensing LLC and Quest Patent Research Corporation*, Civil Action No. 1:22-cv-02306-ER (S.D.N.Y.) |

| Exhibit | Description |
|---|---|
| 15 | *Taasera Licensing LLC v. Check Point Software Technologies Ltd.*, Case No. 2:22-cv-00063-JRG, Civil Cover Sheet, Dkt. No. 1-1 (E.D. Tex.) |
| 16 | United States District Courts - National Judicial Caseload Profile for 12 months ended March 31, 2022 |
| 17 | *Trend Micro, Inc. v. Taasera Licensing LLC*, Case No. 3:22-cv-00518-N, Plaintiff's Opposition to Defendant's Motion to Dismiss Complaint for Declaratory Judgment for Lack of Subject Matter Jurisdiction, or in the Alternative, to Transfer or Stay Under the First-to-File Rule, and to Dismiss for Failure to State a Claim, and Brief in Support, Dkt. No. 21 (N.D. Tex.) |
| 18 | Google Earth Map showing distance from Trend Micro, Inc. to Earle Cabell Federal Building |

I.      **INTRODUCTION**

These actions should not be centralized because their multidistrict nature was manufactured entirely by defendants or related companies filing for declaratory relief in districts outside of the original forum, the Eastern District of Texas. Taasera Licensing, LLC ("Taasera"), the patent owner, has only ever filed actions related to the patents-in-suit in its home district. One defendant then used a subsidiary to file a declaratory judgment action in the Northern District of Texas, and one former defendant filed a declaratory judgment action in the Southern District of New York based on an alter-ego theory. The entities who themselves created litigation inefficiencies by voluntarily choosing to file declaratory judgment actions in different forums now blatantly forum shop by asking that these inefficiencies be remedied through centralization and transfer. Despite Movant having its "global headquarters" and a pending action in Texas, Taasera's principal place of business being located in Texas, and two more pending cases in Texas, Movant nevertheless seeks to transfer this case to California based on incorrect facts, a failure to read basic pleadings in the pending cases, and outright misrepresentations.

The declaratory judgment actions are solely about non-infringement of products sold by those particular entities. There are no claims for invalidity currently pled in either of those cases, and therefore they do not share any issues of anticipation, obviousness, eligibility, inventorship, or priority date with any other pending case. There is also a different set of patents asserted in each case (except for the two Trend Micro cases), and the accused products in the other actions do not overlap. Further, counsel for Trend Micro in the Marshall action is the same as counsel for Trend Micro in the Dallas action, and Movant has presented no reason why efficiencies cannot be gained by sharing discovery between those two actions under a single protective order, as already proposed by Taasera.

In the event the cases are centralized, the two follow-on declaratory judgment actions should be transferred to the Eastern District of Texas, the locus of the disputes in this action and Taasera's home forum.

## II.     BACKGROUND

### A.     Taasera

Taasera is a wholly-owned subsidiary of publicly-traded Quest Patent Research Corporation ("QPRC"). Taasera is a Texas LLC, with a principal place of business in Plano and which owns a portfolio of network security patents purchased from several entities. Ex. 1. Taasera is managed by Tim Scahill, a network security and IT expert who works remotely from his home in Germany. Ex. 2.

### B.     Defendants and Declaratory Judgment Plaintiffs

Trend Micro Incorporated ("Trend Micro Japan") is a Japanese multinational cyber security software company with headquarters in Tokyo, Japan, and is publicly traded on the Tokyo stock exchange. Ex. 3. Taasera sued Trend Micro Japan for patent infringement in November 2021 in the Eastern District of Texas. Because of service delays in Japan and extensions, Trend Micro Japan has not yet responded to Taasera's complaint. Ex. 4.

Trend Micro, Inc. ("Trend Micro US" or "Movant," together with Trend Micro Japan as "Trend Micro") is a U.S.-based subsidiary of Trend Micro Japan. Trend Micro US is a California corporation and a wholly-owned subsidiary of Trend Micro Japan. Ex. 5, ¶ 6. Trend Micro US filed an action against Taasera for declaratory judgment of non-infringement on March 4, 2022. *Id.* Notably absent from Movant's brief in support of consolidation is any mention of its headquarters in Irving, Texas. Trend Micro US's "principal place of business" is located at 225 East John Carpenter Freeway, Irving, Texas 75062. *Id.* ¶ 2. Trend Micro, an operating entity related to Trend Micro Japan, has a major office (and its former headquarters) in San Jose,

California.  Dkt. 1-1 at 16.  Trend Micro US also has an office in New Jersey.  Dkt. 1, ¶ 10.  And publicly-available information suggests that Trend Micro US also has offices in Austin, Chicago, Minneapolis, and Seattle.  Ex. 6.

Check Point Software ("Check Point") is an Israeli company that designs, manufactures, and sells network security products.  Ex. 7.  Taasera filed a patent infringement action against Check Point on February 25, 2022.  Ex. 8.  Check Point has no offices in the United States, although its U.S. subsidiary that is not a party to any action has a location in California.  Ex. 7.

Palo Alto Networks, Inc. ("Palo Alto") is a Delaware corporation with its headquarters in California, which also designs, manufactures, and sells network security products.  Also conveniently missing from Movant's brief is any mention of Palo Alto's office in Plano, Texas.  Ex. 9.  Taasera sued Palo Alto Networks for patent infringement on February 25, 2022, but voluntarily dismissed the action shortly thereafter.  Palo Alto thereafter filed a declaratory judgment action seeking non-infringement of the patents that had been asserted against it in the Southern District of New York, naming both Taasera and QPRC as defendants.

### C. Litigation History

There are four currently pending lawsuits relevant to this action:

(1)   Taasera's affirmative case for patent infringement against Trend Micro Japan, pending in the Eastern District of Texas.  This action is in its early stages, and Trend Micro Japan has not yet responded to the complaint;

(2)   Taasera's affirmative case for patent infringement against Check Point, pending in the Eastern District of Texas.  Check Point's Response to Taasera's Complaint is due on June 21, 2022.  The Check Point case involves seven patents;

(3)   Trend Micro US's declaratory judgment of non-infringement, pending in the Northern District of Texas.  Trend Micro US's declaratory judgment complaint only contains

counts of non-infringement and does not contain any counts of invalidity. Ex. 5. Taasera moved to dismiss the Trend Micro US declaratory judgment action for lack of subject matter jurisdiction, and that motion is pending. On May 12, 2022, the parties jointly submitted a "Joint Initial Case Management Report," as required by the Northern District of Texas local rules. Ex. 10. In that Report, Taasera proposed agreeing to a Protective Order and E-Discovery order that will govern both the Eastern District of Texas and the Northern District of Texas actions. *Id.* at ¶¶ 2, 4. Trend Micro Japan and Trend Micro US share the same counsel representing them in the Eastern and Northern District of Texas cases, Duane Morris LLP. Ex. 11[1]; and

(4) Palo Alto's declaratory judgment of non-infringement in the Southern District of New York. This action seeks a declaration of non-infringement against both Taasera and QPRC based on a two-way alter ego theory in the Southern District of New York.[2] Ex. 12 (Amended complaint). Palo Alto, like Trend Micro in its declaratory judgment action, only seeks a declaration of non-infringement and does not contain any counts related to invalidity or eligibility

---

[1] In the Notice of Filing and Publication of Briefing Schedule (Dkt. 3), the Panel specifically asked the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engage in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." Taasera has attempted to coordinate discovery of both Trend Micro actions. Taasera has also moved to dismiss the Trend Micro US action for lack of jurisdiction and has sought permission from the court in the Southern District of New York to move to dismiss the Palo Alto action. Should those motions be denied, and those cases proceed, Taasera is willing to coordinate discovery among all parties.

[2] Movant also claims that Taasera and QPRC are alter egos of one another, stating that it has "found no evidence that Taasera operates as a distinct entity—via a website, physical location, or any other presence—apart from Quest." Dkt. 1-1 at 6. The problems with this sentence are almost too numerous to name. First, whether Quest and Taasera are alter egos of one another is immaterial to this Motion. Second, as Movant itself admits, Taasera and Quest operate out of different physical locations, one in Texas and one in New York. *Id.* at 5-6. And, Movant's suggestion that it has found "no evidence" of separate behavior, despite citing that very behavior in its brief, turns the burden on its head. It is Movant's burden, and a high one, to show that the two entities are alter egos and have used that status to perpetrate a fraud, injustice, or unfairness. *NetJets Aviation, Inc. v. LHC Commc'ns*, 537 F.3d 168, 174 (2d Cir. 2008).

of any of the asserted patents. Both Taasera and QPRC have sought permission from the court to file motions to dismiss because, absent Palo Alto's spurious alter ego theory, there is no personal jurisdiction in the Southern District of New York over Taasera and there is no subject matter jurisdiction over QPRC because QPRC does not own any of the relevant patents. Exs. 13 and 14.

In all of the cases, no schedules have been set, and discovery has not opened. The below annotated map details the relevant locations of cases and offices for the purposes of this case.



### III.   LEGAL STANDARD

A party seeking to transfer a case for the purposes of multidistrict litigation must show: (1) that "one or more common questions of fact" are shared between the case and the proposed multidistrict litigation, (2) that transfer will serve the "convenience of parties and witnesses," and (3) that transfer will "promote the just and efficient conduct" of the actions to be consolidated. 28 U.S.C. § 1407(a). The Panel has wide discretion in deciding whether to grant such a motion and

5

may consider such factors as the motive of the party seeking the request. *In re Concrete Pipe*, 302 F. Supp. 244, 256 (J.P.M.L. 1969).

Where only a minimal number of cases are involved, the moving party bears a heavier burden of demonstrating the need for centralization. *In re: Transocean Ltd. Sec. Litig.*, 753 F. Supp. 2d 1373, 1374 (J.P.M.L. 2010). And informal coordination by the relevant courts is preferable to centralization. *In re: Constellation Techs. LLC Pat. Litig.*, 38 F.Supp. 3d 1392, 1393 (J.P.M.L. 2014). In patent cases with limited commonality among the accused products, centralization is not warranted. *In re: Blue Spike, LLC Pat. Litig.*, 278 F.Supp. 3d 1379, 1380 (J.P.M.L. 2017).

## IV. ARGUMENT

The Trend Micro US declaratory judgment action, pending 150 miles from the original actions in Marshall, should not be centralized because counsel for Trend Micro is the same in both actions, and informal coordination of discovery and scheduling can easily be achieved in those cases. The Palo Alto declaratory judgment action should not be centralized because it relates only to whether Palo Alto infringes, includes a patent that is not asserted against any other defendant, and shares zero accused products or facts with any other case. *Cf.* Dkt. 1-1, at 3. The two pending cases in the Eastern District of Texas will be consolidated with one another and can easily be coordinated with the other pending actions. And, if centralization were to occur, the Eastern District of Texas is the most preferable and convenient forum.

### A. The Trend Micro Declaratory Judgment Action Should Not Be Centralized Because It Can Be Informally Coordinated Through Common Counsel

Trend Micro US's declaratory judgment action in Dallas, filed by the same counsel defending its parent company in the Eastern District of Texas action, should not be transferred to either California or New York and should not be consolidated at all. Filing a new litigation as a

pretext for a multidistrict litigation is improper. When an action is "filed for the sole (and, in our view, improper) purpose of effecting the creation of an MDL," centralization should be denied because it is "not motivated by a desire to achieve the purposes for which Section 1407 was designed." *In re Klein*, 923 F. Supp. 2d 1373, 1374 (J.P.M.L. 2013) (citing *In re Highway Accident Near Rockville, Conn.*, *on Dec. 30, 1972*, 388 F. Supp. 574, 576 (J.P.M.L. 1975)). And, as is the case here, forum shopping has been specifically recognized as an "ulterior motive" that weighs against transfer. *In re Concrete Pipe*, 302 F. Supp. at 256. Trend Micro's motives are clear, and such attempts at forum manipulation are incorrect and should not be approved.

Several critical facts compel denial of the centralization motion. First, there is already a proposal pending in the Northern District of Texas action to share an E-Discovery Order and a Protective Order among both cases. Ex. 10. Second, counsel for Trend Micro is the same in both cases, Duane Morris LLP. Ex. 11. Third, Plano is the home of Taasera, and Irving is the home of Trend Micro US, both in Texas. Exs. 1, 6. "In these circumstances, informal coordination among the two involved courts and cooperation by the parties seems both practicable and preferable to centralization." *In re: Constellation Techs., LLC Pat. Litig.*, 38 F.Supp. 3d at 1393 (citing *In re: Droplets, Inc. Pat. Litig.*, 908 F.Supp. 2d 1377, 1378 (J.P.M.L. 2012) (denying centralization of six actions pending in three districts where there was some defense counsel overlap)). In instances where there are "a small number of actions, minimal number of districts, and presence of common counsel," formal centralization under Section 1407 is not necessary. *In re Zeroclick, LLC Pat. Litig.*, 437 F. Supp. 3d 1362 (J.P.M.L. 2020) (citing *In re Eli Lilly & Co. (Cephaliexin Monohydrate) Pat. Litig.*, 446 F.Supp. 242, 244 (J.P.M.L. 1978); *see also In re Quest Integrity USA, LLC ('874) Patent Litig.*, 148 F. Supp. 3d 1356 (J.P.M.L. 2015). Because Trend Micro

shares common counsel and Taasera has already proposed coordinating discovery among the two actions, centralization of the two Trend Micro actions is not appropriate.

Trend Micro US could have filed a motion to intervene in the already-pending Eastern District of Texas action, but instead chose to create inefficiencies by filing its own declaratory judgment 150 miles away in Dallas. Its Japanese parent has not yet filed any motion to transfer under § 1404, nor would such a motion be successful. Trend Micro's motive is clear—to find a way to ship this case to California by any means necessary, even if the facts do not in any way support such a transfer. Centralization is not appropriate because these cases are more easily and conveniently organized without the need for centralization, and Movant has not met its elevated burden to show otherwise.

**B.      The Palo Alto Declaratory Judgment Action Should Not Be Centralized Because That Case Relates Only to Infringement by Palo Alto**

Contrary to Movant's brief, the Palo Alto action in the Southern District of New York relates *only* to the infringement of nine patents by Palo Alto. *Compare* Dkt. 1-1, at 15 ("the Taasera actions also involve common questions of fact concerning patent validity.") *with* Ex. 12 alleging only non-infringement). There are no claims for invalidity or ineligibility in the Palo Alto case, and Palo Alto is not seeking monetary damages. Ex. 12. The Palo Alto case is also the only case in which U.S. Patent No. 8,127,356 appears. *See* Dkt. 1-1 at 3.

Where groups of patent cases are centralized for the purposes of multidistrict litigation, Panels consistently recognize that while the individual infringement allegations against the various accused products are different and do not share facts with any other individual case, common issues such as invalidity, eligibility, priority date, prior art issues, and inventorship contain enough

common questions of fact for centralization to sometimes be warranted.[3]  *See, e.g., In re Bear Creek Techs., Inc. ('722) Pat. Litig.*, 858 F.Supp. 2d 1375, 1379-80 (J.P.M.L. 2007) (centralizing actions where they "share substantial background questions of fact concerning the numerous anticipated arguments regarding the validity and enforceability of [the patent] and implicating factual issues concerning such matters as the technology underlying the patent, prior art, priority[,] . . . and/or claim construction."). But *none of those issues have been pled by Palo Alto*. There are nine counts of non-infringement in Palo Alto's amended complaint and zero for invalidity. Movant also preposterously states that there are "common questions" relating to *damages* that each defendant may be ordered to pay in these cases (Dkt. 1-1, at 12), despite the fact that Palo Alto's complaint seeks a declaration of non-infringement and no damages. Because the Palo Alto case does not contain any common questions of fact with any of the other cases, centralization is not appropriate.

      **C.**     **The Products Do Not Overlap**

Movant has not met its heightened burden to show that there are common questions of fact across the multitude of infringing products in these actions.[4] Movant *admits* that "specific facts concerning infringement may vary between defendants based on the products accused . . . ." Dkt. 1-1 at 14. The sum-total of Movant's argument is: (1) a bald citation to a third-party market researcher who identified *some* of the "accused products of Trend Micro, Check Point, and PAN as *competitors* in the EDR and XDR network security markets" (Dkt. 1-1, at 9, Ex. Y) (emphasis

---

[3] Taasera also notes that, because there have been no Answers to either of its affirmative complaints, there has not yet been any allegation of invalidity or lack of subject matter eligibility in any of the four actions.

[4] There is likely to be overlapping products in both of the Trend Micro actions; however, those cases can be informally coordinated as they are pending 150 miles from one another in neighboring districts, Trend Micro is represented by the same counsel in both cases, and Taasera has already proposed sharing discovery and a protective order in both of those actions.

added); and (2) an unsupported statement that "[t]he accused products have features and provide capabilities that are similar to one another." *Id.* But even if some of the accused products are competitors to one another, and even if some of the products have features and provide capabilities that are similar to one another, there is *no* evidence currently in the record that the accused products of one of the accused companies operates in a technically similar manner for the purposes of the patents-in-suit to any other product. This alone should defeat consolidation. Indeed, there are vastly different types of accused products at issue in this case, from mail scanners to graphical user interfaces to firewalls. The accused products vary considerably. The types of products accused of infringing the '796 Patent include hardware and software firewalls, endpoint security products, SaaS application security products, email servers, email gateways, web gateways, messaging gateways, collaboration portals, and software suite protection tools. Infringement of the '796 Patent is not consistent between the defendants. Depending on the defendant, up to 6 patents relate to products where a defendant might have both an EDR and XDR product where one or both of the products infringe the claims. Some of these products may be optional add-on components to the EDR and/or XDR products. *Cf. In re ArrivalStar S.A. Fleet Mgmt. Sys. Pat. Litig.*, 802 F. Supp. 2d 1378, 1379 (J.P.M.L. 2011) ("the diversity of defendants' businesses may hinder the alleged infringers' ability to adopt common positions regarding the interpretation of common claims of the various patents, which thereby diminishes some of the potential efficiencies created by centralization."). Movant has not met its burden to show overlap among products, and therefore consolidation should be denied.

> **D.    Taasera Will Move to Consolidate the Two Eastern District of Texas Actions**

Taasera's two offensive cases in the Eastern District of Texas against Trend Micro and Check Point should be treated as a single case for the purposes of this motion, because it is highly

likely that Judge Gilstrap will consolidate them for pre-trial purposes once those cases are ready for scheduling conferences. Taasera has already indicated that these cases are related in its Civil Cover Sheet related to Check Point. Ex. 15. Once consolidated, and assuming that counsel coordinate that case with the Trend Micro US declaratory judgment action, there is only one other case—the unrelated, non-overlapping Palo Alto case in the Southern District of New York. Such a small number of actions counsels against centralization. *In re Zeroclick, LLC Pat. Litig.*, 437 F. Supp. 3d at 1362. Because there are precisely zero efficiencies to be gained from centralization in this instance, the motion should be denied.

### E. If Consolidated, Transfer to the Eastern District of Texas is Appropriate for the Follow-on Declaratory Judgment Actions

In the event these cases are centralized, transferring the declaratory judgment actions to the Eastern District of Texas is the proper, convenient, and fair solution. The Eastern District of Texas is far less congested——with a median time of 24.2 months from complaint to trial compared to 31.1 months for the Northern District of California and 39.4 months for the Southern District of New York. Ex. 16 (District Court data through March of 22). Judge Gilstrap, an "experienced jurist," (*cf. In re Quest Integrity USA, LLC Pat. Litig.*, 148 F. Supp. 3d at 1357 is capable of shepherding these cases to their conclusions.

Neither the Northern District of California nor the Southern District of New York is convenient. Movant leans heavily on the locations of the inventors of the patents-in-suit, the locations of alleged prior art inventors, and the locations of prior owners of the patents-in-suit to support their argument for transfer. Dkt. 1-1 at 9-11. The bi-coastal nature of these witnesses dooms any transfer. California-based witnesses may prefer testifying close to home, but California is distinctly *less* convenient for those located on the East Coast. The same problem exists if the case is transferred to New York. And Movant has apparently not contacted any of these witnesses,

11

does not know which will be subpoenaed in these cases (if any), and presents no affirmative statements from any of them that travel to Marshall would be inconvenient.

It is also not clear why the locations of any third parties are relevant factors for pre-trial purposes. MDL centralization is for pre-trial purposes only, so any eventual trial would be held in the original venue and testifying witnesses would need to travel there. For routine discovery, Movant presents no evidence whatsoever that any third party is incapable of producing documents or information if the cases are pending in Texas, but otherwise capable of producing the same information if the cases are pending elsewhere. And any discovery depositions could be scheduled to minimize disruption to the witness and be taken remotely via videoconference to minimize travel and cost to the witness or, even if in person, would need to be conducted in the district in which the witness resides. Movant also makes several careless references to Check Point's "U.S. subsidiary" in California in order to manufacture another connection to that district. But that subsidiary is not a defendant (or plaintiff) in any action, and Movant has not even stated why that subsidiary is relevant in this action. Check Point is an Israeli company, and its witnesses will be testifying from outside the United States.

Trend Micro Japan's witnesses will likely be located in Japan or Taipei which, *albeit* physically closer to California, will require significant travel in either district. Ex. 17 at 11. Movant also *completely ignores* that its United States headquarters is located in Irving, Texas, just a short distance from Marshall and a mere 11 miles from the Federal Courthouse in Dallas. Ex. 18. Movant also ignores its other U.S. offices scattered about the country, choosing only to focus on its California office without any specific reference to what witnesses and evidence are located in that office that would be so inconvenient to send to Marshall. Movant has not stated what, if any, information relevant to a highly-technical patent case will exist at U.S. sales offices when

12

Trend Micro has admitted that its products are designed and manufactured overseas, and the Japanese parent company that is already a defendant in the Eastern District of Texas action will obviously also be in possession of any U.S. sales information necessary to form a damages model. And the Southern District of New York is even further from the California-based witnesses and documents than Texas.

## V.   CONCLUSION

Because defendants have created inefficiencies by filing declaratory judgment actions, their attempts at forum shopping via centralization and transfer should be denied. The Trend Micro declaratory judgment action can be informally coordinated with the other action against Trend Micro pending in the same state, wherein Trend Micro is represented by the same counsel in both. The Palo Alto declaratory judgment action shares no common issues of fact with any other pending case, and thus should also not be centralized. If any centralization does occur, the cases should be transferred to the original forum, the Eastern District of Texas.

Dated: June 10, 2022                              Respectfully submitted,

/s/ Alfred R. Fabricant
Alfred R. Fabricant
ffabricant@fabricantllp.com
FABRICANT LLP
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

**ATTORNEYS FOR
TAASERA LICENSING LLC
Case No. 1:22-cv-02306 (S.D.N.Y.)
Case No. 3:22-cv-00481 (N.D. Tex.)
Case No. 2:22-cv-00063 (E.D. Tex.)
Case No. 2:21-cv-00441 (E.D. Tex.)**

**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE TAASERA LICENSING, LLC, PATENT LITIGATION | § § § § § MDL-3042 |

**SCHEDULE OF ACTIONS**

| Plaintiff | Defendant(s) | Court | Civil Action No. | Judge |
|---|---|---|---|---|
| Palo Alto Networks, Inc. | Taasera Licensing, LLC and Quest Patent Research Corporation | S.D. New York | 1:22-cv-02306 | Edgardo Ramos |
| Trend Micro, Inc. | Taasera Licensing, LLC | N.D. Texas | 3:22-cv-00481 | David C. Godbey |
| Taasera Licensing, LLC | Check Point Software Technologies Ltd. | E.D. Texas (Marshall) | 2:22-cv-00063 | J. Rodney Gilstrap |
| Taasera Licensing, LLC | Trend Micro Incorporated | E.D. Texas (Marshall) | 2:21-cv-00441 | J. Rodney Gilstrap |

Dated:  June 10, 2022

Respectfully submitted,

*/s/ Alfred R. Fabricant*
Alfred R. Fabricant
ffabricant@fabricantllp.com
FABRICANT LLP
411 Theodore Fremd Avenue,
Suite 206 South
Rye, New York 10580
Telephone: (212) 257-5797
Facsimile: (212) 257-5796

***ATTORNEYS FOR
TAASERA LICENSING LLC
Case No. 1:22-cv-02306 (S.D.N.Y.)
Case No. 3:22-cv-00481 (N.D. Tex.)
Case No. 2:22-cv-00063 (E.D. Tex.)
Case No. 2:21-cv-00441 (E.D. Tex.)***